▉ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN M. TOMAINO, Appellant. [670 NYS2d 950] —Judgment reversed on the law and indictment dismissed with leave to the People to apply to Supreme Court for an order permitting resubmission of the charge to another Grand Jury. Memorandum: Defendant was convicted after a jury trial of murder in the second degree (Penal Law § 125.25 [1]) in connection with the death of his wife (decedent) on November 18, 1990. The death was initially thought to be a suicide and, after an exhaustive investigation, the Grand Jury refused in September 1991 to indict defendant for murder. In December 1991 the Erie County District Attorney was appointed special prosecutor in the case because defendant's attorney was elected Niagara County District Attorney. In December 1994 County Court granted the prosecutor's ex parte application to resubmit the case, and in June 1995 a Special Grand Jury was impaneled to hear the case on resubmission. That Grand Jury voted in July 1995 to indict defendant for murder in the second degree. Defendant's trial was held in August and September 1996.

While the proof of guilt at trial is not overwhelming, it is legally sufficient to establish defendant's guilt beyond a reasonable doubt (see, People v Williams, 84 NY2d 925, 926; see also, People v Spaight, 92 AD2d 734). The crime scene evidence strongly suggests that decedent's death resulted from murder, rather than suicide. If the People's proof is believed, defendant had the motive, the opportunity and the means to kill decedent. The jury, in "exercising its prerogative to resolve matters of credibility * * * and conflicting proof * * * not unreasonably concluded" that defendant murdered decedent (People v Duffy, 185 AD2d 528, 529, lv denied 80 NY2d 903), and in so doing gave the evidence the weight it should be accorded (see, People v Bleakley, 69 NY2d 490, 495).

We reject the argument of defendant that Supreme Court erred in summarily denying his motion to dismiss the indictment on the ground that the 56-month preindictment delay violated his due process right to a speedy trial. Defendant does not argue that the delay preceding the first Grand Jury presentment was unreasonable, nor has he questioned the reasonableness of the delay before the appointment of the special prosecutor. Rather, he argues that the 43-month delay between the appointment of the special prosecutor and the indictment was unreasonable. It was not until an April 19, 1993 meeting with decedent's family, however, that the special prosecutor had any reason to question the validity of the first Grand Jury's refusal to indict. Until that meeting, which occurred 16 months

after his appointment, the special prosecutor was "justly entitled" to believe that, in the absence of any new evidence, the determination of the Grand Jury with respect to defendant was the end of the matter (*People v Dykes*, 86 AD2d 191, 195). Thus, there is a reasonable explanation for his inaction during that 16-month period.

"Upon * * * a serious charge, the District Attorney may be expected to proceed with far more caution and deliberation than he would expend on a relatively minor offense" (*People v Taranovich*, 37 NY2d 442, 446). Where, as here, a serious charge has already been examined by a Grand Jury and dismissed, the prosecutor would be expected to proceed with circumspection. Preindictment delays of up to 11 years in murder cases have passed constitutional muster (*see, People v Frazier*, 159 AD2d 1017, *lv denied* 76 NY2d 734, *cert denied* 498 US 873; *see also, People v Brown*, 209 AD2d 233, *lv denied* 85 NY2d 860). There is no proof that the delay in this case was a "deliberate attempt by the prosecution to hamper the [defendant] in the preparation of his defense" (*People v Taranovich*, *supra*, at 446; *see, People v McNeill*, 204 AD2d 975, *lv denied* 84 NY2d 829). Because defendant was never incarcerated preindictment, he may not claim that the delay hindered his ability to gather evidence or contact prospective witnesses (*see, People v Taranovich, supra*, at 446). Finally, there is no indication that the defense was impaired by reason of the preindictment delay.

We reject the further argument of defendant that County Court abused its discretion in granting the special prosecutor permission to resubmit the case to a second Grand Jury. At defense counsel's request, the first Grand Jury was given a moral certainty instruction and told, *inter alia*, that "if, after carefully considering the circumstantial facts proved you remain uncertain and not convinced that guilt is the only hypothesis which can be reasonably drawn from the facts proved, then you must return a no-bill". That instruction, however, was improper because it is not applicable in Grand Jury proceedings (*see, People v Colon*, 188 AD2d 708; *People v Vallone*, 140 AD2d 729, 730). Because the circumstantial evidence question was at the very heart of the decision to vote an indictment (*see, People v Batashure*, 75 NY2d 306, 311-312), that error affected the integrity of the first Grand Jury proceedings (*see, People v Caracciola*, 78 NY2d 1021).

No-bills are entitled to great deference because they represent a determination that "the evidence was not of sufficient credible worth to warrant a prosecution" (*People v Dykes*,

*supra*, at 195). Here, however, the Grand Jury may have rejected the People's proof based upon a misunderstanding of the law. The improper instructions gave County Court reason to believe that the first Grand Jury acted in an irregular manner. Under the circumstances, therefore, that court did not abuse its discretion in granting the People's application to resubmit (*see, People v Dykes, supra*, at 195).

Furthermore, we reject the argument of defendant that the failure to record County Court's charge to the Special Grand Jury was reversible error (*see*, CPL 190.25 [6]). The recorded instructions given by the special prosecutor are complete, and the People have averred that the court did not discuss the evidence or the procedural history of this case. Although the lack of full compliance with CPL 190.25 (6) is disapproved, defendant has not shown "an articulable 'likelihood of', or at least 'potential for' prejudice" (*People v Adessa*, 89 NY2d 677, 686; *see, People v Rallo*, 46 AD2d 518, 528, *affd* 39 NY2d 217).

Nevertheless, there were errors in the second presentation, none of which alone necessarily requires reversal, but which cumulatively impaired the integrity of the proceedings to such a degree that prejudice to defendant may have resulted (*see*, CPL 210.35 [5]). First, the special prosecutor should not have explained to the grand jurors the reason for the five-year delay in prosecution. Among other things, the prosecutor told them that the first presentment had resulted in a no-bill and that the court had granted permission to re-present the case because improper instructions were given to the first Grand Jury, which did not hear all the relevant proof. Defendant's argument, that the Grand Jurors were left with the impression that they were impaneled to right a perceived wrong, is compelling, notwithstanding their assurance that they would make their decision based solely upon the evidence. "At the very least, such [a statement] delivered to laypersons carries an unacceptably high risk that they might misconstrue * *. * their own role in reviewing the evidence" (*People v Batashure, supra*, at 310). The history of the case was not relevant to the Grand Jury's decision and should not have been discussed (*see, People ex rel. Besser v Ruthazer*, 3 AD2d 137).

There are several instances of testimony elicited before the Special Grand Jury that were particularly egregious. Decedent's father, for example, testified that, on some unspecified date, decedent told him, "I got a little booklet * * * [I]f they ever find that, that will put [defendant] away for life." One of defendant's former co-workers was permitted to testify that she felt animosity toward defendant because after decedent's

death defendant allegedly put her company out of business and cost 70 people their jobs. The co-worker also testified at length about defendant's jealous and possessive nature as reflected by defendant's relationship with a live-in girlfriend one year after decedent's death. Another witness read to the Special Grand Jury the answer filed by decedent in a divorce proceeding pending at the time of her death, including her allegations that defendant falsely accused her of having affairs and threatened her with violence. The priest at decedent's church expressed his belief that decedent had not committed suicide, and decedent's father told the Special Grand Jury that there was no question in his mind that defendant murdered his daughter. Furthermore, the firearms examiner opined that "personally" he would not commit suicide by shooting himself in the back of the head with a .45 caliber handgun, and a blood splatter expert testified that the location of the wound was not consistent with suicide. That same expert also improperly opined that it was more likely that decedent, who was a nurse, would commit suicide by taking a medication overdose than by shooting herself. The above testimony appears to have been deliberately elicited to influence the Special Grand Jury's decision whether this was a suicide or a murder committed by defendant.

"It is * * * beyond dispute that improper influences and exposure to bias can so undermine the Grand Jury's integrity as to require dismissal of the resulting indictment" (*People v Adessa, supra,* at 682). Dismissal of an indictment under CPL 210.35 (5) is appropriate "where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the Grand Jury. The likelihood of prejudice turns on the particular facts of each case, including the weight and nature of the admissible proof adduced to support the indictment and the degree of inappropriate prosecutorial influence or bias" (*People v Huston,* 88 NY2d 400, 409). In this unusual case, the cumulative impact of the special prosecutor's improper tactics during the presentation of the case to the Special Grand Jury sufficiently impaired the integrity of the proceedings to such a degree that defendant may have been prejudiced, and dismissal of the indictment is warranted (*see, People v Huston, supra*).

Supreme Court also erred in failing to suppress audio tests conducted by the police in defendant's home on January 10, 1991 while executing a search warrant. The warrant authorized the search of the residence for "blood stains, latent fingerprints, [and] gunpowder residue" and "to photograph and

videotape certain areas of said residence as requested in application". It did not, however, authorize audio tests in the home to measure the sound of test firings of a .45 caliber handgun in the basement bedroom where decedent's body was found (*see, Marron v United States*, 275 US 192, 196, *reh denied* 277 US 613; *see also, People v Baker*, 23 NY2d 307, 320-321, *mot to amend remittitur denied* 23 NY2d 898).

The People argue that, because the police do not need specific authorization to take photographs or measurements while executing a search warrant (*see, Town of E. Hampton v Omabuild USA No. 1*, 215 AD2d 746, 748), they did not need specific authorization to perform the test firings. The test firings, however, were not merely incidental to the execution of the warrant, nor were they designed simply to memorialize the search. They were in fact intended to create evidence separate and distinct from that addressed in the warrant.

We therefore reverse the conviction and dismiss the indictment with leave to the People to apply to Supreme Court for an order permitting resubmission of the charge to another Grand Jury (*see,* CPL 210.20 [4]; *People v Huston, supra,* at 411). In view of our determination, we decline to address defendant's remaining arguments.

All concur, Callahan, J., not participating. (Appeal from Judgment of Supreme Court, Niagara County, Koshian, J.—Murder, 2nd Degree.) Present—Green, J. P., Lawton, Wisner, Callahan and Fallon, JJ.