■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DUSHON FOSTER, Respondent. [720 NYS2d 98] —Order, Supreme Court, Bronx County (Joseph Fisch, J.), entered December 3, 1999, which granted defendant's motion to dismiss an indictment charging him with two counts of assault in the second degree and one count each of assault in the third degree and obstructing governmental administration in the second degree, unanimously reversed, on the law, and the indictment reinstated.

This action arises out of an altercation between defendant and Correction Officer Barry Pankey, which occurred while defendant was being transferred from his cell to the courtroom in the Bronx Criminal Court building. A Grand Jury proceeding commenced on April 14, 1999 and on that date, the Grand Jurors heard testimony from the complainant, Officer Pankey.

The case was adjourned until April 16, 1999, at which time defendant testified, and was adjourned again until April 23, 1999, when the Grand Jury heard testimony from a Correction Officer who had witnessed the altercation.

Thereafter, on April 27, 1999, the Grand Jury heard testimony from a Captain in the Department of Correction, at the conclusion of which the prosecutor charged the Grand Jury. Later that day, the following took place, on the record, in the Grand Jury room:

"[THE PROSECUTOR]: What I understand from the foreperson is that the Grand Jury does not have the necessary number of votes to either dismiss the charges or to vote a true bill at this time; is that correct?

"THE FOREPERSON: That's correct.

"[THE PROSECUTOR]: I also understand from the foreperson that additional evidence will help the Grand Jury with their deliberations; is that correct Mr. Foreperson?

"THE FOREPERSON: That's correct.

"[THE PROSECUTOR]: I understand that the Grand Jury would like to hear from the inmate whom Dushon Foster said was in the adjacent cell at the time.

"THE FOREPERSON: Correct again.

"[THE PROSECUTOR]: And that the Grand Jury would like the medical records of both Dushon Foster and Corrections Officer Barry Pankey.

"Just for the record, I am going to do all that I can in order to get those documents and this inmate to go before Grand Jury to testify, keeping in mind, however, that the availability of the inmate is still undetermined.

"Okay. Okay. At this time—withdrawn.

"Thank you."

On April 30, 1999, additional testimony was heard and various medical records were entered into evidence. The Grand Jury was then charged a second time and subsequently voted a true bill. In an omnibus motion dated July 27, 1999, defendant requested, *inter alia*, that the court inspect the Grand Jury minutes and dismiss the indictment on the ground that prosecutorial abuse impaired the integrity of the proceedings. On September 8, 1999, the court held that the Grand Jury minutes were unclear and, accordingly, ordered an evidentiary hearing to determine what occurred on April 27, 1999.

A hearing was subsequently held on October 12, 1999, at which time David Burke, the Grand Jury foreperson, testified

that the Grand Jurors heard testimony from Officer Pankey, defendant and other witnesses and then began deliberating on the case. The foreperson indicated that there were experienced people on the Grand Jury who found the evidence insufficient. The foreperson maintained that the Grand Jury "demanded more evidence"; that the prosecutor did not speak with him prior to the decision regarding obtaining additional evidence; that it was he who spoke to the prosecutor after calling him to a partition by the door; and that he explained to the prosecutor the need for further evidence and that there was a failure to obtain 12 votes to either dismiss or indict. The court then questioned Mr. Burke regarding the specifics of the failure to indict or dismiss and the following ensued:

"THE COURT: Mr. Burke, let me ask you, when you say you could not get 12 people to indict or to dismiss, did people raise their hand or did you count and find that it fell short of the numbers and that's how you determined that you did not have the votes?

"THE WITNESS: Well, some people didn't even raise their hand because they weren't satisfied with the evidence.

"THE COURT: Some—

"THE WITNESS: Some people did not raise their hands?

"THE COURT: But was there a vote taken?

"THE WITNESS: At that time there was no vote taken, it was arguments then votes.

"THE COURT: So when you told Mr. Keller you could not get 12 people to indict or dismiss, there was no vote taken before that—

"THE WITNESS: Not that I remember. Not that I remember. I only know at that particular time that there weren't 12 people to indict or dismiss.

"THE COURT: How did you know you didn't have 12 if you didn't count them?

"THE WITNESS: Because when I asked the hands that was raised was just a few.

"THE COURT: So you asked for a vote on indicting and you got less than 12?

"THE WITNESS: Less than 12 for dismiss.

"THE COURT: I'm sorry.

"THE WITNESS: And less than 12 for dismissing, also.

"THE COURT: So you asked for a vote on each case?

"THE WITNESS: Yes, I did ask for a vote, you know. But even before I asked for a vote, there was arguments in there room.

"THE COURT: But there came a time when you asked for a vote to indict and you had less than 12 hands go up, correct?

"THE WITNESS: There was—at one—yes, I remember at one occasion or two occasions less than 12, yes.

"THE COURT: And then you asked for a vote to dismiss and you had less than 12 hands go up on that; is that what happened?

"THE WITNESS: Yes."

Further, Mr. Burke was very clear that the Grand Jury demanded more evidence and that more than 12 people joined in that demand.

The foreperson, when questioned on cross examination as to whether the prosecutor asked what was needed in order to vote a true bill, responded "[h]e doesn't ask questions. He do [*sic*] what he's told." Further, the prosecutor, upon being advised of the Grand Jury's demand, did not make any facial gestures or demand that another vote be taken but, rather, put the Grand Jury's request on the record.

The hearing court, in rendering its decision, held that the "Grand Jury's failure to vote a true bill after its consideration of submitted charges and its determination that the evidence presented was 'insufficient' constitutes a 'no true bill,' tantamount to a dismissal, requiring leave of the court for resubmission pursuant to CPL 190.75 (3) * * * In effect, the failure of 12 members of the Grand Jury to vote a true bill is the same as a vote to dismiss." The hearing court acknowledged that the Grand Jury must exercise one of the options set forth in CPL 190.60 and that "[h]ere, the Grand Jury took action by twelve members non-voting a true bill, the equivalent to a no true bill."

The hearing court also cited to the "acknowledged off-the-record conversations" between the foreperson and the prosecutor pertaining to the failure to vote a true bill on the submitted charges and the need for additional evidence, and held that: "[t]hese were not mere casual conversations of inconsequential nor collateral nature, but rather struck at the very heart and substance of the presentation of the People's case * * * This Court holds that such off-the-record communications between the foreperson and the prosecutor, in conjunction with the fact that the Grand Jury, on April 27, 1999, was not satisfied with the evidence which it found insufficient, impaired the integrity of the process and created the possibility of prejudice to the defendant." Upon a review of the record, as well as the relevant statutes and case law, we now reverse.

CPL 190.60 provides that after hearing and examining evidence, a Grand Jury may, *inter alia*, indict a person for an offense or dismiss the charge before it. Further, CPL 190.50 (3) empowers the Grand Jury to call any witness it believes "possess[es] relevant information or knowledge." CPL 190.25 (1), however, places a restriction on when a Grand Jury's actions are official and states that: "Proceedings of a grand jury are not valid unless at least sixteen of its members are present. The finding of an indictment, a direction to file a prosecutor's information, a decision to submit a grand jury report and *every other affirmative official action or decision requires the concurrence of at least twelve members thereof.*" (Emphasis added.)

In view of the foregoing statutory language, and contrary to the finding of the trial court, it is clear that in order to indict or dismiss, there must be a minimum of 12 votes for the particular action taken.* Moreover, what is also clear is that in this matter, more than 12 Grand Jurors demanded to hear from additional witnesses and to be provided with further medical evidence, as they were authorized to do under CPL 190.50 (3). Accordingly, the only legal action taken by the Grand Jury on April 27, 1999 was its decision to hear additional evidence and since there were less than 12 votes for dismissal, the first prong of the court's holding is rendered erroneous. It follows, therefore, that the prosecution was not required to seek permission from the court to resubmit the case.

Notwithstanding the foregoing, even if this Court were to conclude that the Grand Jury's non-vote constituted a dismissal, its *sua sponte* decision to demand more evidence and reconsider the charges was entirely proper as the record indicates that the decision was truly independent and not the result of prosecutorial overreaching (*see, People v Montanez*, 90 NY2d 690; *People v Neal*, 231 AD2d 470, *lv denied* 89 NY2d 927). Indeed, we find absolutely no support in the record for the hearing court's conclusion that conversations between the prosecutor and foreperson "impaired the integrity of the process" or somehow "struck at the very heart * * * of the People's case." Rather, it appears that the foreperson summoned the prosecutor and requested more evidence to which the prosecutor's immediate response was to place that request on the record. Concur—Nardelli, J. P., Mazzarelli, Andrias, Lerner and Buckley, JJ.

---

* In this case, there were neither 12 votes to indict nor dismiss, and to accept the trial court's finding that the failure to obtain 12 votes for a true bill is equivalent to a dismissal would require the acceptance of the equally incorrect corollary, that the failure to garner 12 votes for a dismissal is equivalent to an indictment.