[759 NYS2d 20]

# THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LENWORTH AARONS, Respondent.

First Department, April 24, 2003

### APPEARANCES OF COUNSEL

*Stanley R. Kaplan* of counsel (*Joseph N. Ferdenzi* on the brief; *Robert T. Johnson, District Attorney*, Bronx County, attorney), for appellant.

*Julian A. Hertz* for respondent.

### OPINION OF THE COURT

BUCKLEY, P.J.

On a Friday afternoon, the grand jury lacked the votes necessary to take action. The foreperson so advised the prosecutor. Hearing this, the prosecutor requested the grand jury to cease deliberations and return the following week for additional testimony. This stoppage was a hiatus in procedure, not a termination of deliberations. This interim stoppage does not amount to a grand jury dismissal of the charges. The dismissal should be reversed and the indictment reinstated.

On March 3, 1999, 13-year-old Nasheem and his 15-year-old sister, Naiecha, testified before a grand jury as follows: They were in their home one afternoon the previous December when a stranger rang the doorbell, looking for Dennis (their mother's boyfriend). While telling the stranger that Dennis wasn't there, Nasheem acknowledged to him that Dennis drove a red Nissan. The stranger asked for some writing material to leave his number. As Nasheem went to get a pen and paper, he left the door ajar. When he returned, he found that the stranger had entered the house uninvited. As the stranger was writing down his number, the telephone rang. It was for Naiecha, who came downstairs to answer the call.

Acting as if he were about to leave but couldn't find his keys, the stranger walked into the living room. By depressing the receiver, he disconnected Naiecha's telephone conversation with her girlfriend. The stranger then pulled a black and silver gun from his waist area and asked the children where there was money in the house. Nasheem told him that their mother kept her money in her room with the door locked. At the stranger's direction, the three went upstairs where the stranger put on latex gloves, tried the knob of the bedroom door, and then tried to kick open the door.

The doorbell rang, and the stranger ordered the children into Naiecha's room, telling them to stay there. He left the house just as Naiecha's girlfriend arrived, concerned about her lately interrupted telephone conversation.

According to police testimony before the grand jury, the children viewed a lineup at the police station in February, each in-

dependently identifying defendant as the stranger. The children's mother testified that: (1) she neither knew nor had ever met defendant; (2) she had never given him permission to enter her home; (3) nothing was missing from the premises; and (4) she had a boyfriend named Dennis who resided elsewhere.

At the grand jury's request, Dennis was called as a witness, testifying that he did not know defendant nor had he ever given defendant permission to enter his girlfriend's premises. Defendant opted to testify, offering an alibi.

On Friday, March 19, 1999, the prosecutor instructed the grand jury on the law. She asked them to commence deliberations on the charges of burglary, attempted robbery, criminal possession of a weapon, menacing, endangering the welfare of a child and harassment. Later that day, the foreperson advised the prosecutor, off the record, that the grand jury was having difficulty reaching a decision. The prosecutor then went before the grand jury and asked them to stop their deliberations so that she could present to them an additional witness.

Early the following week, the prosecutor reconvened the grand jury and summoned this witness who placed defendant in the vicinity of the crime on the date and time in question. The prosecutor again instructed the grand jury on the law and asked them to vote on the case. This time, the requisite majority returned a true bill, indicting defendant for several crimes. Thereafter, the motion court granted defendant's motion to dismiss the indictment as defective.

At common law the grand jury could not dismiss a charge against the person without endorsing on the back of the bill "not a true bill." In 1881, in New York, a statute codified this requirement that a grand jury endorse or file its finding of dismissal in order to dismiss a charge.

"When the grand jury have heard the evidence, if they think it a groundless accusation, they used formerly to *endorse on the back of the bill*, *'ignoramus';* or, we know nothing of it; intimating, that though the facts might possibly be true, that truth did not appear to them: but now, they assert in English, more absolutely, 'not a true bill;' and then the party is discharged without farther answer." (W. Blackstone, Commentaries on the Laws of England, A Facsimile of the First Edition of 1765-1769, vol IV, Of Public Wrongs [1769], at 301 [University of Chicago Press] [emphasis added]).

Our own grand jury system is patterned after the English system as above described by Blackstone. The Code of Criminal Procedure, as first enacted, states in relevant part:

"§ 268. Indictment must be found by twelve grand jurors and indorsed by foreman. An indictment cannot be found without the concurrence of at least twelve grand jurors. When so found it must be indorsed, 'A true bill,' and the indorsement must be signed by the foreman of the grand jury."

"§ 269. If not so found, depositions, etc., must be returned to the court, with dismissal indorsed. If twelve grand jurors do not concur in finding an indictment, the depositions (and statement, if any) transmitted to them, *must be returned to the court, with an indorsement thereon*, signed by the foreman, to the effect that the charge is dismissed" (emphasis added).

These two sections, with several incidental amendments, were the law of this state for nearly a century until replaced by the Criminal Procedure Law on September 1, 1971. Thus, (1) as the common law *required* its "ignoramus" or "not a true bill" for discharge of the groundless accusation, (2) the Code of Criminal Procedure *required* "an indorsement thereon, signed by the foreman, to the effect that the charge is dismissed"; and now, (3) section 190.75 (1) of the Criminal Procedure Law *requires* that "the grand jury *must*, through its foreman or acting foreman, file its finding of dismissal with the court by which it was impaneled" (emphasis added).

Nevertheless, even when confronted with this statutory requirement of grand jury action from common law to the CPL, defendant still contends that "failure to indict constitutes dismissal." In fact, defendant has offered no substantial evidence that overcomes the presumption of regularity to prove that a failure to indict constitutes dismissal.

"In the absence of any specific proof, the law presumes that the statutory requirements were satisfied. Under this 'presumption of regularity' the law further presumes that no official or person acting under an oath of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done. Substantial evidence is necessary to overcome that presumption. There is no such substantial evidence in this case." (*People v Dominique*, 90 NY2d 880, 881 [1997]; *see also People v Lynch*, 171 Misc 2d 310 [1997]; Prince, Richardson on Evidence § 3-120 [Farrell 11th ed]; Fisch, New York Evidence § 1134 [2d ed].)

New York law has long required some formality to a grand jury's dismissal action (*see e.g. Matter of Osborne*, 68 Misc 597, 601 [1910] ["a grand jury can act only in the manner prescribed by law, that when it so acts a certain definite legal result must follow, and that such result can be expressed only in either one of the two formulas: 'A true bill found' or 'charge dismissed' "]; *People v Kelly*, 140 Misc 377, 379 [1931] ["In order that it can be said that there has been a dismissal within the meaning of the Code, definite action must be shown to have been taken by the grand jury"]; *People v Davis*, 114 Misc 2d 645, 647 [1982] ["To constitute a dismissal, some definite action must have been taken by a Grand Jury"]).

This is a case about the termination of deliberations by action of the grand jury. The directions and "menu" for such action are set forth in five sections of article 190 of the Criminal Procedure Law, entitled "The Grand Jury and Its Proceedings" (listed in order of consideration here), namely: CPL 190.75, 190.05, 190.60, 190.25 (1) and 190.71. Enacted in 1970 after "[t]he Bartlett Commission comprehensively studied the entire body of law * * *" (*People v Collier*, 72 NY2d 298, 302 n 1 [1988]), the CPL replaced the old Code of Criminal Procedure, which had been the law since 1881.

*People v Wilkins* (68 NY2d 269 [1986]) provides insight as to the issue before this Court, namely: whether a hiatus in deliberations amounts to a grand jury dismissal. The Court there observed (*id.* at 273-274):

"The comprehensive statutory scheme regulating Grand Jury proceedings does not contemplate the termination of deliberations without some action by the Grand Jury. Thus, CPL 190.60 gives the Grand Jury a limited range of dispositions after hearing and examining evidence, including either indicting the defendant or dismissing the charges."

In short, the grand jury must act upon one of the options provided by statute (*Mooney v Cahn*, 79 Misc 2d 703, 705 [1974]; 32 NY Jur 2d, Criminal Law § 1094).

In *People v Foster* (182 Misc 2d 863, 867 [1999]), the motion court correctly stated that the statutory scheme required the grand jury to "exercise one of the options provided in CPL 190.60; it cannot fail to act." But the court incorrectly concluded that the failure to vote a true bill constituted no true bill, and on that basis we reversed (279 AD2d 317 [2001]).

CPL 190.75 (1) provides that (1) where evidence before a grand jury "is not legally sufficient to establish" whether the

individual under investigation has committed a crime, or (2) where the panel "is not satisfied that there is reasonable cause to believe that such person committed such crime," the grand jury "must * * * file its finding of dismissal with the court by which it was impaneled." Where there has been such a dismissal, there can be no further grand jury action on that matter without leave of court (CPL 190.75 [3]).

Here, the motion court reasoned that at the time the foreperson told the prosecutor that the grand jury could not reach a decision, the panel had, in effect, concluded no true bill, by reason of insufficient evidence. Under this reasoning, submission of additional evidence without leave of court was not allowed. Specifically, the motion court held that

> "[i]f the Grand Jury fails to vote for indictment, the Grand Jury has dismissed the charge and no separate vote is required as to whether to dismiss, as a dismissal is not an affirmative action * * *. [T]herefore, no separate vote is necessary or warranted to conclude the Grand Jury's action on the matter. * * * [T]he court finds that the Grand Jury voted and failed to have the concurrence of twelve jurors voting for an indictment. Accordingly, the Grand Jury dismissed the charges submitted."

This was error. Surely a grand jury cannot be denied further deliberations once it has taken a single, inconclusive, preliminary vote.

The grand jury never formally filed a "finding of dismissal" in this case. It never indicated, even informally, an intention to act in that regard. There having been no dismissal, the grand jury was not barred from further consideration of the case without leave of court (*cf., People v Montanez*, 90 NY2d 690 [1997]). True, the foreperson indicated a momentary stalemate. This, however, was indecision, not a decision to dismiss, or a decision to vote no true bill.

Here, on the record, the prosecutor told the grand jury that she had been "informed by your Foreperson that you would not be able to come to a decision either way; is that correct, Mr. Foreperson?" The foreperson acknowledged, "This is correct." The prosecutor then instructed the jurors: "Cease deliberations on this case at this time, and I will attempt to bring in additional witnesses and give you additional testimony * * * and at that time sometime next week I will ask you to consider these charges again."

The foreperson was motivated by the grand jury's difficulty in reaching any decision. She understood that the grand jury was still deliberating and would be unable to reach a decision before they broke for the weekend. The prosecutor's instruction to cease deliberations "on this case at this time" was valid under the circumstances. The prosecutor would never have asked the foreperson for a temporary stoppage if the grand jury had reached a decision either way.

CPL 190.75. Under the Criminal Procedure Law enactment, the powers of the grand jury now include dismissal of the charges before it only "in [accordance with] section 190.75" (CPL 190.60 [4]). A major change from the prior Code of Criminal Procedure is found in CPL 190.75 (3), which prevents a judge from resubmitting a dismissed charge to a grand jury on his or her own motion more than once (see Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 190.75).

The maxim expressio unius est exclusio alterius applies in the construction of statutes, namely, "where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (McKinney's Cons Laws of NY, Book 1, Statutes § 240). Accordingly, the Legislature would have so provided under CPL 190.75 if it had intended that a hiatus in deliberations would amount to dismissal of the charges. Since the Legislature did not so provide, we must infer that what was not included was intended to be excluded. In other words, a hiatus in deliberations does not amount to dismissal of the charges.

Several recent cases involve the interpretation of CPL 190.75 (3). People v Wilkins (68 NY2d 269 [1986]) holds that when a prosecutor withdraws a case from the grand jury after presentation of the evidence, this withdrawal is the equivalent of a dismissal by the first grand jury. Wilkins further holds that the prosecution may not resubmit the charges to the second grand jury without the consent of the court. In the case at bar, however, the prosecutor did not withdraw the case from the grand jury after the presentation of evidence.

In People v Montanez (90 NY2d 690 [1997]), the grand jury had voted a no true bill on a robbery charge. When the vote sheet was given to the Assistant District Attorney, in the presence of the grand jury, his surprise by the vote was visible. Shaking his head in apparent disbelief before the grand jury, he walked out of the room. The vote was never filed. The grand

jury, on its own initiative, then heard further testimony. The grand jury was recharged, revoted the case and indicted the defendant for robbery and assault. The trial court, however, dismissed the robbery charge, holding that (1) the grand jury's reconsideration was not sua sponte, and (2) the prosecutor's actions had impaired the integrity of the proceedings to the defendant's prejudice. The Third Department reinstated the indictment (225 AD2d 233 [1996]), holding that the grand jury had acted completely on its own, and that the prosecutor had done nothing wrong. In reversing the Appellate Division and determining that the resubmission of the robbery charge violated the mandate of CPL 190.75 (3), the Court of Appeals wrote (90 NY2d at 695):

"Once the Grand Jury has indicated its rejection of the People's evidence [citation omitted], then the customarily unfettered prosecutorial discretion in dealing with the Grand Jury is checked by the necessity of judicial authorization to resubmit. The prosecutor may not unilaterally intervene in the proceedings in any manner which causes or contributes to the Grand Jury's decision to reconsider its action."

In the case at bar, however, the grand jury never indicated its rejection of the People's evidence, so the sua sponte requirement of *Montanez* does not apply here. Our grand jury simply had not made any decision.

In *People v Gelman* (93 NY2d 314 [1999]), when the People presented evidence to the first grand jury, only two witnesses testified—a fireman who fought the blaze, and a fire inspector who testified that the fire was not natural or accidental. Neither witness identified the defendant as the owner of the building or linked him in any way to the fire. The Assistant District Attorney asked the grand jury to extend its term for the purpose of hearing additional witnesses in the case, but the panel voted not to extend its term. The People then withdrew the case and without judicial approval resubmitted it to a new grand jury, calling 16 witnesses. The Court held there was no decision by the grand jury, but rather a withdrawal of the charges by the People. Also, the People were not required to seek judicial approval to resubmit the charges to a second grand jury panel after the matter was withdrawn from the first. In the case at bar, however, there was no decision and no withdrawal of the charges by the People.

CPL 190.05 defines and describes the grand jury's general functions, including "to take action with respect to such evidence as provided in section 190.60."

CPL 190.60 sets forth the action to be taken by a grand jury. It may

"1. Indict a person for an offense, as provided in section 190.65;

"2. Direct the district attorney to file a prosecutor's information with a local criminal court, as provided in section 190.70;

"3. *Direct the district attorney to file a request for removal to the family court, as provided in section 190.71 of this article*;

"4. *Dismiss the charge before it, as provided in section 190.75*;

"5. Submit a grand jury report, as provided in section 190.85" (emphasis added).

This section simply presents a menu of the actions available to the grand jury. (The prior Code of Criminal Procedure had no analogue and did not focus on what action a grand jury may take after it has heard and examined evidence.) Each course of action is more fully described in the sections specified in the respective subdivisions. Thus, section 190.60 specifically states what course of action a grand jury may take, including the dismissal of the charge as provided in section 190.75.

CPL 190.25 (1) specifies that 16 members constitute a grand jury quorum, and that at least 12 members must concur in the "finding of an indictment, a direction to file a prosecutor's information, [or] a decision to submit a grand jury report and every other *affirmative official action or decision*" (emphasis added). Since CPL 190.25 (1) is not totally clear on its face with respect to the meaning of "affirmative official action or decision," we cannot use the plain-meaning doctrine to understand the section. This doctrine, as applied to this case, is too restrictive. It ignores other sources and evidence of legislative intent, such as context, legislative history and the purpose of the enactment. In the prevailing view of the Court of Appeals, the duty of the courts in statutory interpretation is to determine the legislative intent through examination of all available legitimate sources. (*Matter of Sutka v Conners*, 73 NY2d 395, 403 [1989]; *Matter of Albano v Kirby*, 36 NY2d 526, 529-531 [1975]; *Matter of Petterson v Daystrom Corp.*, 17 NY2d 32, 38 [1966].) As Chief Judge Breitel wrote in *New York State Bankers Assn. v Albright* (38 NY2d 430, 436 [1975]), "[a]bsence of facial ambiguity is * * * rarely, if ever, conclusive. The words men use are never absolutely certain in meaning; the

limitations of finite man and the even greater limitations of his language see to that. Inquiry into the meaning of statutes is never foreclosed at the threshold."

The holding of the motion court in this case is based upon its interpretation that CPL 190.25 (1) means "dismissal is not an affirmative action." This was error.

The requirement of concurrence by 12 for "other affirmative official action" was introduced in 1970.

The Court of Appeals, in *People v Collier* (72 NY2d at 302), has authoritatively interpreted the meaning of "affirmative official action" as used in CPL 190.25 (1), observing:

"The language is hardly—and, we conclude, *not materially—different.* Indeed, had the Legislature intended to change such a basic provision of the Criminal Procedure Law after nearly a century, surely it would have said so. Neither the words of the statute nor its history reveal any intention to rewrite the law in this respect." (Emphasis added.)

Further,

"The original Practice Commentary * * * notes that the only new part of the statute was the requirement that at least 12 grand jurors concur for *official actions* other than the finding of an indictment or filing of a report, which had not been specified in the Criminal Code." (*Id.*; emphasis added.)

In sum, the Court of Appeals has concluded that the words "affirmative official action" in this statute are "not materially different" from "official actions."

CPL 190.71. The power to direct a district attorney to file a request for removal to Family Court is one of the five actions listed in CPL 190.60 that may be taken by a grand jury. Significantly, neither dismissal of the charge nor the direction to request removal to Family Court is set forth in CPL 190.25 (1). Undoubtedly, the latter is an "affirmative official action" requiring the concurrence of at least 12 members. By the same token, dismissal of the charge must also be such an "affirmative official action."

Having considered the legislative intent in the comprehensive statutory scheme of article 190, the meaning of "affirmative official action" as interpreted in *People v Collier* (72 NY2d 298 [1988]), and the exclusion from CPL 190.25 (1) of both the

request for removal to Family Court and the dismissal of the charge, we now turn to the rule of ejusdem generis, the principle of statutory interpretation that a general statutory term should be understood in light of the specific terms which surround it (*Hughey v United States*, 495 US 411, 419 [1990]). Applying this principle to CPL 190.25 (1), the statute can only be understood to require the concurrence of at least 12 members to take action as required by CPL 190.60 (including dismissal of the charge before it) and every other official action or decision, including the calling of a witness or the granting of immunity to a witness.

No provision of the statute, nor any controlling case law, leads to a contrary conclusion. Indeed, recent case law in this Court compels us to reverse the motion court's dismissal order. In *People v Foster* (279 AD2d 317 [2001]), the foreperson told the prosecutor that the grand jury did not have the necessary majority either to dismiss or to vote a true bill. The motion court in *Foster* interpreted the statute to say that inability to reach an affirmative decision on indictment at any point in deliberations constituted the equivalent of dismissal. In reversing the motion court and rejecting this interpretation, we unanimously held that a minimum of 12 votes was required in order to indict or to dismiss. As we noted there, an inference of dismissal from the grand jury's failure to tally 12 votes for a true bill is not valid. An inference of indictment from the grand jury's failure to garner 12 votes for dismissal would be equally invalid.

The only distinguishing factor between *People v Foster* and the case at bar is this: In *Foster*, the foreperson specifically invited the prosecutor to present additional evidence. As in *Foster*, the grand jury in the case before us was in the midst of deliberations, even though it was unable to reach a decision. Clearly, the foreperson's initiative in telling this to the prosecutor implied an openness to the introduction of further evidence. Based upon the above interpretation of the relevant sections of CPL article 190, the holding of *Foster* should not be limited to situations where a temporarily stalemated grand jury formally requests additional evidence.

Shortly after *Foster*, this Court had occasion to revisit the issue in *People v Medina* (283 AD2d 250 [2001]). As in the case at bar, the *Medina* grand jury indicated that it was stalled on whether to vote a true bill or dismiss the charges. The prosecutor was ready to withdraw the case and present it to a new grand jury, when the criminal court judge granted an exten-

sion to hold over the charged individual and directed the prosecutor to permit the existing panel to deliberate for another day. After further deliberations the next day, the grand jury voted a true bill on four felony counts. Later that same day, the prosecutor presented additional evidence and asked the grand jury to consider a fifth count, on which it then voted a supplemental true bill. As in *Foster*, the motion court dismissed the entire, consolidated indictment on a familiar ground: failure to vote a true bill initially (notwithstanding a lack of an affirmative vote to dismiss) constituted an action equivalent to dismissal. On appeal, we reversed unanimously, again holding that the lack of 12 votes to indict cannot be construed as the equivalent of a dismissal. Therefore, *Medina* stands as further precedent for reversal of the order now before us.

In the past two years, this Court has twice unanimously ruled that no inference of dismissal can be drawn from a grand jury's momentary inability to vote out a true bill of indictment. A court is an institution whose adherence to soundly reasoned precedent is essential to our system of jurisprudence (*see People v Hobson*, 39 NY2d 479, 487-491 [1976]). The doctrine of stare decisis stands as a check on a court's temptation to overrule recent precedent. Only compelling circumstances should require us to depart from this doctrine (*Cenven, Inc. v Bethlehem Steel Corp.*, 41 NY2d 842, 843 [1977]). By no means does this case warrant such departure.

Accordingly, the order of the Supreme Court, Bronx County (Peter Benitez, J.), entered on or about July 31, 2000, which granted defendant's motion to dismiss indictment number 1559/99, charging him with burglary in the first degree, attempted robbery in the first degree and other crimes, should be reversed, on the law, the motion denied and the indictment reinstated.

ELLERIN, J. (dissenting.) The issue raised on this appeal is whether a prosecutor may, without judicial leave, present additional evidence and resubmit a case to a grand jury after the grand jury has failed to indict on the evidence first presented to it. As will be discussed fully below, a grand jury's failure to indict a person on the evidence presented to it was held a dismissal of the charge against the person at common law and has been defined as a dismissal of the charge by statute since the first comprehensive criminal procedure law of this state was enacted more than 100 years ago. Nevertheless, the Bronx

County District Attorney appeals from the dismissal of an indictment that was obtained after the prosecutor presented additional evidence and resubmitted the case, without leave of court, to the grand jury that had failed to indict on the evidence first presented. I would affirm.

Until *People v Foster* (279 AD2d 317 [2001]) was decided (*accord People v Medina*, 283 AD2d 250 [2001]), it had long been unquestioned at bench and bar that a failure to indict constitutes dismissal, as is evident from a brief survey of relevant cases (*see e.g. People v Tomaino*, 248 AD2d 944, 944, 945 [1998] [the grand jury "refused in September 1991 to indict defendant for murder"; the Court subsequently referred to the murder charge as having been "examined by a Grand Jury and dismissed"]; *People v Franco*, 196 AD2d 357, 362 [1994], *affd* 86 NY2d 493 [1995] [the grand jury's "failure to vote a true bill on any of the submitted charges was a complete rejection of the People's evidence"]; *People v Dykes*, 86 AD2d 191, 192 [1982] [the grand jury "refused to indict"; in an application to the court, the prosecutor referred to "the dismissal" and "the dismissed charges"]; *People v Martin*, 71 AD2d 928, 928 [1979] [after the grand jury "failed to find a true bill," the prosecutor moved for leave to resubmit charges pursuant to the statute authorizing resubmission of charges that have been dismissed by a grand jury]; *People v Davis*, 114 Misc 2d 645, 647 [1982] ["The court finds that this matter was dismissed when the Grand Jury failed to return a true bill on the manslaughter in the first degree charge"]; *People v Besser*, 207 Misc 692, 693 [1955] ["Th(e) Grand Jury failed to find an indictment and returned to the court a 'dismissal' of the charge"]; *People v Brinkman*, 126 NYS2d 486, 488 n 2 [Queens County Ct 1953] [describing the procedure whereby, after "the grand jury find(s) no cause for indictment," that finding "becom[es] a record of the dismissal of the charge"]; *People v Pack*, 179 Misc 316, 322 [1942] ["The question presented in this case is whether the (felony) rule applies to a misdemeanor. Is the Magistrate * * * compelled to dismiss the case because the grand jury declined to find an indictment on the same charge?"]; *Matter of Gardiner*, 31 Misc 364, 367 [1900] ["if (the grand jury) have legal evidence of the commission of the crime it should find an indictment against (the individual charged) upon which he could be held to answer, and if it have no such evidence, it ought, in fairness, to be silent"]).

In arguing that *People v Foster* (*supra*) and *People v Medina* (*supra*) should be followed, the majority observes that the doctrine of stare decisis should not be departed from except under

compelling circumstances (*Cenven, Inc. v Bethlehem Steel Corp.*, 41 NY2d 842, 843 [1977]). It is important to remember, however, that stare decisis is " 'not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience' " (*People v Hobson*, 39 NY2d 479, 487 [1976], quoting *Helvering v Hallock*, 309 US 106, 119 [1940] [Frankfurter, J.]). *People v Foster* (279 AD2d 317 [2001]) announced a radical and unwarranted departure from firmly established precedent inimical to the doctrine of stare decisis and has been followed in one instance only (*see People v Medina, supra*). I believe that those cases were wrongly decided, and that the ends of justice require they not be followed, and that this Court "should depart from them rather than adhere slavishly to error" (*People v Damiano*, 87 NY2d 477, 504 [1996] [internal quotation marks and citation omitted]), and that we should reaffirm and announce a return to established procedure, which is "more embracing in its scope, intrinsically sounder, and verified by experience." (39 NY2d at 487.) As Chief Judge Breitel warned in *People v Hobson* (*supra* at 488), "there is potential for jurisprudential scandal in a court which decides one way one day and another way the next; but it is just as scandalous to treat every errant footprint barely hardened overnight as an inescapable mold for future travel."

Despite the well-settled, statutorily supported principle that the failure to indict constitutes a dismissal, the Bronx County District Attorney maintains that dismissal follows a failure to indict only if the grand jury votes to dismiss the charge. As Supreme Court found on defendant's motion to dismiss the indictment in this case, Bronx County prosecutors "regularly instruct the grand juries that any action requires a vote of twelve jurors." Pursuant to this scheme, when fewer than 12 grand jurors vote either to indict or to dismiss, the grand jury is deemed to have taken no action at all, thereby permitting the prosecutor to present additional evidence in what is really a dismissed case or to resubmit the case for another vote, without judicial leave.

At issue here is CPL 190.25 (1), which provides, in pertinent part: "The finding of an indictment, a direction to file a prosecutor's information, a decision to submit a grand jury report *and every other affirmative official action or decision* requires the concurrence of at least twelve members thereof" (emphasis added).

The majority accepts the District Attorney's contention that the dismissal of a charge is one such "other affirmative official action or decision." Indeed, *People v Foster (supra)* announced that, just as a defendant cannot be indicted unless at least 12 grand jurors vote to indict, a charge cannot be dismissed unless at least 12 grand jurors vote to dismiss it. For the following reasons, this is not, nor should it be, the law.

The plain meaning of the phrase, "[t]he finding of an indictment, a direction to file a prosecutor's information, a decision to submit a grand jury report and every other affirmative official action or decision" (CPL 190.25 [1]; *see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]), is that the named actions and decisions are affirmative, that other actions and decisions that are like the named ones are affirmative, and that still others that are not like the named ones are not affirmative. This application of common sense is codified in the rule of statutory construction known as ejusdem generis ("of the same kind"), which "requires the court to limit general language of a statute by specific phrases which have preceded the general language * * *" (McKinney's Cons Laws of NY, Book 1, Statutes § 239 [b]). That is, "the general phrase [every other affirmative official action or decision], since it follows words of a particular meaning, is to be construed as applying only to [actions or decisions] of the same kind as those precisely stated" (*People v Shapiro*, 50 NY2d 747, 764 [1980]). Since dismissal is not named in CPL 190.25 (1), it can be regarded as an affirmative action or decision only if it is "of the same kind" as the three actions or decisions that are "precisely stated."

Examination of the provisions governing the named affirmative actions or decisions with the provision governing dismissal reveals, at a minimum, the following distinctions. Each affirmative action or decision must be supported by evidence that satisfies a particular standard.

For the finding of an indictment, CPL 190.65 (1) provides that:

> "a grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense * * *, and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense."

For a direction to file a prosecutor's information, CPL 190.70 (1) provides that:

"a grand jury may direct the district attorney to file in a local criminal court a prosecutor's information charging a person with an offense other than a felony when (a) the evidence before it is legally sufficient to establish that such person committed such offense, and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense."

For a decision to submit a grand jury report, CPL 190.85 provides that:

"[a] grand jury may submit to the court by which it was impaneled, a report * * *

"[c]oncerning misconduct, non-feasance or neglect in public office by a public servant as the basis for a recommendation of removal or disciplinary action [and that] * * *

"[t]he court to which such report is submitted shall * * * make an order accepting and filing such report as a public record only if the court is satisfied that it * * *

"is supported by the preponderance of the credible and legally admissible evidence" (CPL 190.85 [1] [a]; [2] [a]).

Dismissal of a charge that a person committed a crime, on the other hand, follows from the failure of the evidence to meet the standard for the finding of an indictment. CPL 190.75 (1) provides:

"If upon a charge that a designated person committed a crime, either (a) the evidence before the grand jury is not legally sufficient to establish that such person committed such crime or any other offense, or (b) the grand jury is not satisfied that there is reasonable cause to believe that such person committed such crime or any other offense, it must dismiss the charge."

The language of the provisions governing each of the affirmative actions or decisions is permissive. The grand jury "may" indict (CPL 190.65 [1]), "may" direct the District Attorney to file a prosecutor's information (CPL 190.70 [1]), and "may" submit a grand jury report (CPL 190.85), when the evidence meets the relevant standard. The language of the provision governing dismissal, on the other hand, is peremptory. The

grand jury "must" dismiss the charge when the evidence fails to meet the standard for the finding of an indictment (CPL 190.75 [1]). The plain meaning of this language is that, even when it is convinced by the evidence that the person charged is likely to have committed an offense, the grand jury may choose not to indict the person (see e.g. Note, *The Grand Jury as an Investigative Body,* 74 Harv L Rev 590, 590 [grand jury's function "to protect the accused by its power not to indict those whom the government wished to punish"]; *People v Valles,* 62 NY2d 36, 42-43 [1984] [Meyer, J., dissenting on whether prosecutor must instruct grand jury on affirmative defense ("Unquestioned * * * has been the right of the Grand Jury to nullify the law by refusing to indict notwithstanding the presentation to it of evidence sufficient to sustain an indictment")]). When the evidence fails, however, the grand jury has no choice but to dismiss.

Each of the named affirmative actions or decisions results in further proceedings against the defendant. When a grand jury indicts a person, the person goes to trial. When a grand jury directs the District Attorney to file in a local criminal court a prosecutor's information charging a person with an offense other than a felony, the person goes to trial. When the court accepts a grand jury report of a public servant's misconduct, nonfeasance or neglect in public office, the report is filed as a public record and the public servant may be subject to removal or discipline. Dismissal, on the other hand, results not in further proceedings against the defendant but in the termination of the proceedings and the restoration of the defendant to the status quo ante.

In sum, dismissal is profoundly unlike the named affirmative actions and decisions. Therefore, unlike them, it does not require the concurrence of 12 grand jurors. As indicated, until two years ago, when *People v Foster (supra)* was decided, this principle was well established. "The grand jury must file a finding of dismissal with the superior court if it finds that the proof does not support an indictment of the defendant for a particular offense. This result is reached when the grand jury fails to vote affirmative action" (Gray, New York Criminal Practice, at 107 [2d ed]). It was only after the decisions in *People v Foster (supra)* and *People v Medina (supra)* that the second sentence quoted above was deleted (see Gray, New York Criminal Practice, 2002 Supp, at 61). A reaffirmation by this Court of long-established grand jury procedure would be timely and provident.

The legislative history of the statute is compelling. The first comprehensive New York criminal procedure statute was the Code of Criminal Procedure of 1881, which provided that "[a]n indictment cannot be found without the concurrence of at least twelve grand jurors" (§ 268) and that, "[i]f twelve jurors do not concur in finding an indictment, the depositions (and statement, if any) transmitted to them, must be returned to the court, with an indorsement thereon, signed by the foreman, to the effect that the charge is dismissed" (§ 269). Thus, sections 268 and 269 together directed a grand jury to ascertain by a vote whether there were 12 members who would find an indictment and to report the result of that vote as an indictment if there were 12 or a dismissal if there were not at least 12. A separate provision set forth the standard of evidence for the finding of an indictment (§ 258).

The Criminal Procedure Law was enacted in 1970 to repeal and replace the Code of Criminal Procedure, as amended through the years.[1] However, CPL 190.25 (1) and 190.75 (1) were derived from sections 268 and 269 of the Code, respectively;[2] CPL 190.65 (1) was derived from section 258.[3] These CPL provisions operate in the same way as the Code provisions from which they are derived. CPL 190.25 (1) and 190.65 (1) together provide that a grand jury may indict a person only when 12 of its members agree that "(a) the evidence before it is legally sufficient to establish that [the charged] person committed [the charged] offense * * *, and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense" (hereinafter, evidence that is legally sufficient and legally credible). In other words, evidence is legally sufficient and legally credible only when 12 or more grand jurors agree that it is. It follows ineluctably that, when there is no such agreement among any 12 jurors, the evidence is either not legally sufficient or not legally credible (or it is neither). CPL 190.75 (1) requires that a charge be dismissed if the evidence is either not legally sufficient or not legally credible. Therefore, when no 12 grand jurors agree that the evidence is legally sufficient and legally credible, the charge must be dismissed. In short, the text of the

1. *See* Criminal Procedure Law, McKinney's Cons Laws of NY, Book 11A, at 1; L 1970, ch 996, § 1.

2. *See* Historical and Statutory Notes, McKinney's Cons Laws of NY, Book 11A, CPL 190.25, at 214; CPL 190.75, at 348.

3. *See* Historical and Statutory Notes, McKinney's Cons Laws of NY, Book 11A, CPL 190.65, at 328.

CPL is organized differently from that of the Code, but the procedure itself remains the same. The CPL directs a grand jury to ascertain by a vote whether there are 12 members who would find an indictment and to report the result of that vote as an indictment if there are 12 or a dismissal if there are not at least 12. The statute does not require—nor does it serve any purpose intended by the Legislature to require—grand jurors additionally to vote expressly on whether to dismiss the charge.

Moreover, to require a grand jury to vote on whether to dismiss a charge is antithetical to the grand jury's historical "dual role of investigating crimes and protecting citizens from unfounded prosecutions and governmental overreaching" (*People v Adessa*, 89 NY2d 677, 682 [1997]). This protective role is guaranteed by article I, § 6 of the New York Constitution ("No person shall be held to answer for a capital or otherwise infamous crime * * *, unless on indictment of a grand jury * * *"). Our grand jury was intended to operate substantially like its English progenitor (*see Costello v United States*, 350 US 359, 362 [1956]). That is, "[w]hen the grand jury have heard the evidence, if they think it a groundless accusation, * * * they assert * * *, 'not a true bill;' and then the party is discharged without farther answer. * * * But, to find a bill, there must at least twelve of the jury agree: for so tender is the law of England of the lives of the subjects, that no man can be convicted at the suit of the king of any capital offence, unless by the unanimous voice of twenty four of his equals and neighbours: that is, by twelve at least of the grand jury, in the first place, assenting to the accusation; and afterwards, by the whole petit jury, of twelve more, finding him guilty upon his trial" (W. Blackstone, Commentaries on the Laws of England, A Facsimile of the First Edition of 1765-1769, vol IV, Of Public Wrongs [1769], at 301).

The converse contention, that no charge against a man can be dismissed except by unanimous voice of 12 grand jurors denying the accusation, subverts the role of protecting individuals from unfounded prosecutions (*cf. People v Batashure*, 75 NY2d 306, 310 [1990] ["It is simply not permissible for a District Attorney to inform grand jurors, who by statute and Constitution, have the unique responsibility to decide whether to vote an indictment, that as a matter of law the prosecutor has already determined that there is enough evidence to warrant that action. At the very least, such an instruction delivered to laypersons carries an unacceptably high risk that

they might misconstrue or undervalue their own role in reviewing the evidence, or even assume that the defendant should be indicted"]). To serve their true purpose, grand jurors must understand as they decide whether to vote an indictment that their collective vote on that one question is conclusive, whatever the outcome. I refer here to the vote that the grand jury reports to the prosecutor. If 12 or more of its members voted yes, then the grand jury may find a "true bill," or an indictment. If fewer than 12 of its members voted yes, then the grand jury must return "no true bill," or a dismissal.

Any indication to a grand jury, as was given here, that a vote of fewer than 12 to indict is inconclusive absent a vote of at least 12 to dismiss, whether communicated by the prosecutor in an explicit instruction that any action requires the concurrence of 12 grand jurors or in the treatment of an insufficient vote to indict as an impasse to be broken by presenting additional evidence, is impermissible. "When the District Attorney's instructions to the Grand Jury are so incomplete or misleading as to substantially undermine [its] essential function [of protecting individuals from unfounded and arbitrary accusations], it may fairly be said that the integrity of that body has been impaired" (*People v Calbud, Inc.*, 49 NY2d 389, 396 [1980]).

The only situation in which a grand jury's inability to indict does not result in dismissal of the charge is where the grand jury decides sua sponte to reconsider the charge rather than filing the dismissal (*see* CPL 190.75 [1], [3]; *People v Montanez*, 90 NY2d 690 [1997]).

CPL 190.75 (3) provides:

> "When a charge has been so dismissed, it may not again be submitted to a grand jury unless the court in its discretion authorizes or directs the people to resubmit such charge to the same or another grand jury. If in such case the charge is again dismissed, it may not again be submitted to a grand jury."

CPL 190.75 (3) was derived from section 270 of the Code of Criminal Procedure of 1881, which provided that "[t]he dismissal of a charge does not, however, prevent its being again submitted to a grand jury as often as the court may so direct. But without such direction it cannot be again submitted." At common law, a prosecutor could submit a charge to a grand

jury repeatedly without court authorization.[4] Section 270 reflected the Legislature's recognition of "a need to insulate the Grand Jury process from the excesses which would flow from domination by a prosecutor" (*People v Wilkins*, 68 NY2d 269, 273 [1986]). CPL 190.75 (3) was enacted to limit the multiple submissions authorized by section 270 (*id.*) and permits one court-authorized resubmission only. This provision reflects the Legislature's recognition that judges as well as prosecutors may be "overzealous" and that "repeated re-submissions of the same charge 'is contrary to the spirit of our criminal law' * * * whether such re-submission is upon application of the district attorney or upon the court's own motion."[5] However, when a grand jury that has voted and failed to indict decides sua sponte to reconsider the matter, neither the letter nor the spirit of CPL 190.75 (3) is violated (*People v Montanez, supra*, 90 NY2d at 694). "Since the reconsideration is not prompted by the prosecutor, there is no possibility of prosecutorial over-reaching; the integrity and independence of the Grand Jury is not impugned" (*id.*).

This Court reinstated the indictment in *Foster* (*supra*, 279 AD2d at 321) upon a finding that the grand jury had made a truly sua sponte decision to demand more evidence and reconsider the charges. However, closer examination of the record reveals that this finding is not supported. At a hearing on the defendant's motion to dismiss the indictment, the foreman of the grand jury testified that he had told the prosecutor that the jury could not muster 12 votes either to dismiss or to indict and needed more evidence. This testimony is consistent with the finding of Supreme Court in the instant case that Bronx prosecutors regularly instruct grand juries that any action requires a vote of 12 jurors. And it demonstrates that it was this instruction that was the catalyst for the grand jury's request for more evidence. Having concluded that further deliberation on the evidence already presented would not yield the required 12 votes either way, the grand jury had no choice but to ask for more evidence. If it had not been instructed to regard a vote of fewer than 12 to indict as an impasse rather than a decision, it would not have perceived a need for more evidence (*see People v Batashure, supra*, 75 NY2d at 310 ["such

---

4. Staff Comment, 1967 Proposed New York Criminal Procedure Law § 95.75, at 165.

5. Staff Comment, 1967 Proposed New York Criminal Procedure Law § 95.75, at 166, 167, quoting *People ex rel. Flinn v Barr*, 259 NY 104, 109 (1932).

an instruction * * * carries an unacceptably high risk that they might * * * assume that the defendant should be indicted"]). Thus, the grand jury's request in *Foster* cannot be said to have been truly sua sponte. In the instant case, there was no request at all from the grand jury. After the foreperson informed the prosecutor that the grand jury was unable to come to a decision either way, the prosecutor volunteered to "attempt to bring in additional witnesses and give you additional testimony" and indeed did present additional evidence.

"The distinction which the courts have drawn between sua sponte reconsideration by the Grand Jury and reconsideration at the behest of the prosecutor is a sensible one, and is consistent with the policies underlying CPL 190.75" (*Montanez, supra*, 90 NY2d at 694-695). A rule requiring 12 votes either to indict or to dismiss, however, obliterates this sensible distinction. Reconsideration by a grand jury that fails either to indict or to dismiss is a reconsideration at the behest of the prosecutor. In *Foster*, as in the instant case, the prosecutor thwarted the "beneficent purpose" of CPL 190.75 (3) (*People ex rel. Flinn v Barr, supra*, 259 NY at 109) by refusing to accept the grand jury's insufficient vote to indict as a dismissal. In each case, the prosecutor presented additional evidence and resubmitted the case to the grand jury, without judicial leave, and in that way ultimately secured the indictment (*cf. Wilkins, supra* at 275 [power to withdraw a case from grand jury consideration after completing the presentation of evidence would furnish the prosecutor "the means of defeating CPL 190.75 (3) in almost every case by withdrawing all but 'open and shut' cases and resubmitting them after further preparation or a more compliant Grand Jury is impaneled"]).[6] The rule that permitted the prosecutor in *Foster* and in the instant case to thwart the beneficent purpose of CPL 190.75 (3) violates both the letter and the spirit of the statute (*see Montanez, supra* at 694).

The majority appears to argue that there never was a dismissal here because the grand jury never filed a finding of dismissal (CPL 190.75 [1]). However, it is "through its agent the District Attorney" that the grand jury files its vote (*Montanez, supra*, 90 NY2d at 694). "[T]he [majority's] theory would permit

---

**6.** The District Attorney makes much of a dictum in *Wilkins* (*supra*) that supports his position that CPL 190.25 (1) requires the concurrence of 12 grand jurors for a dismissal. However, that issue was not before the Court in *Wilkins*, where, as the Court itself noted, "the question [of how to dispose of the charge] was not put to a vote" (*id.* at 274).

a prosecutor to do indirectly that which the statute prohibits him to do directly—to resubmit charges to a Grand Jury without judicial permission. It is doubtful that the Legislature intended that by the simple subterfuge of failing to file a dismissal, the salutary purpose of the statute may be frustrated" (*People v Davis, supra*, 114 Misc 2d at 647 [citations omitted]; *see also People v Cade*, 74 NY2d 410, 416 [1989] [filing provision is directory only and imposes no time limits]).

For the foregoing reasons, I would affirm the order granting defendant's motion to dismiss the indictment.

TOM and WILLIAMS, JJ., concur with BUCKLEY, P.J.; ROSENBERGER and ELLERIN, JJ., dissent in a separate opinion by ELLERIN, J.

Order, Supreme Court, Bronx County, entered on or about July 31, 2000, reversed, on the law, defendant's motion to dismiss indictment denied and the indictment reinstated.